UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL LUINSTRA | § | |
| | § | |
| v. | § | CIVIL NO. 4:26-CV-683-SDJ |
| | § | |
| NITOR E, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Michael Luinstra's Motion to Remand, (Dkt. #24); Intervenor Plaintiffs Zachary West, Michael Damron, and Christopher Smith's Motion to Remand, (Dkt. #41); and Counter Defendants Lauren Lombas and Neptune Security, Inc.'s Motion to Remand or Alternatively Motion to Dismiss Under Rule 12(b)(1), (Dkt. #42). Defendant Nitor E, LLC opposes the motions. *See* (Dkt. #36, #44). After full consideration, the Court will deny the remand motions.

## I. BACKGROUND

This case arises from allegations that several of Defendant's former employees breached the post-employment restrictive covenants in their employment agreements. Defendant Nitor E, LLC is a national physical security and managed services platform. (Dkt. #20-7 ¶ 3). In March 2024, Nitor hired Plaintiff Michael Luinstra to serve as its Regional Vice President for the Western Region. (Dkt. #20-7 ¶ 15). Luinstra brought with him Intervenor Plaintiffs Zachary West, Christopher Smith, and Michael Damron, as well as Counter Defendant Lauren Lombas (together, the "Former Employees"). (Dkt. #20-7 ¶ 17).

At the time of their hiring, the Former Employees each signed an employment agreement with Nitor containing non-compete, non-solicitation, and confidentiality

1

provisions. (Dkt. #20-7 ¶¶ 20–25). The non-compete and customer non-solicitation would apply for one year following termination of employment; the employee non-solicitation for two years; and the confidentiality provisions for three years. (Dkt. #20-7 ¶¶ 22–24).

A few years into the Former Employees' employment with Nitor, while still employed by Nitor, Luinstra created Counter Defendant Neptune Security, Inc. and registered it with the Texas State Comptroller. (Dkt. #20-7 ¶ 36). Luinstra resigned from Nitor the next day, followed shortly thereafter by Lombas, West, Smith, and Damron—all of whom left to work for Luinstra's new company, Neptune. (Dkt. #20-7 ¶¶ 39–41). According to Nitor, "[a]lmost immediately after [they] resigned," the Former Employees began competing with Nitor and "soliciting customers they had previously serviced on behalf of Nitor in violation of their restrictive covenants." (Dkt. #20-7 ¶ 42). Nitor alleges, for example, that the Former Employees (through Neptune) attempted to poach at least two Nitor client projects, one worth $651,232 and the other worth $260,000 per year. Both projects carry with them "the likely opportunity for additional follow-on projects." (Dkt. #20-7 ¶¶ 44–56). Nitor further alleges that the Former Employees misappropriated its trade secrets and other confidential information. (Dkt. #20-7 ¶¶ 57–70).

Faced with these alleged violations of the Former Employees' restrictive covenants, Nitor moved to enforce the restrictive covenants against them. But before Nitor could do so, Luinstra filed this suit in state court. *See* (Dkt. #20-3). Among other things, Luinstra seeks preliminary and permanent injunctive relief "enjoining Nitor

2

from enforcing the restrictive covenants" in his employment agreement. (Dkt. #20-3 at 27). While the case was still in state court, West, Smith, and Damron intervened as plaintiffs, seeking the same basic relief as Luinstra. *See* (Dkt. #20-5). Nitor then removed the case to this Court and filed counterclaims, adding Lombas and Neptune as counter defendants. *See* (Dkt. #2 at 14). Along with its notice of removal, Nitor filed a motion for temporary restraining order and motion to expedite discovery, both of which remain pending before the Court. *See* (Dkt. #3, #4). The Former Employees and Neptune filed their own motion for temporary restraining order the following week. *See* (Dkt. #27). The Former Employees and Neptune now move to remand this case back to state court, arguing that the amount in controversy does not exceed $75,000 as necessary to establish diversity jurisdiction. (Dkt. #24, #41, #42).

## II. LEGAL STANDARD

A defendant may remove a case based on diversity jurisdiction when the suit is between citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. § 1332(a). "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014) (quoting 28 U.S.C. § 1446(c)(2)). But when, as here, the plaintiff's state court petition does not state the amount in controversy, the defendant's notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. Evidence establishing the amount in controversy is required

3

"only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

"If the plaintiff contests the allegation, then the defendant must prove, by a preponderance of the evidence, that the amount in controversy requirement has been satisfied." *A & C Disc. Pharmacy, L.L.C. v. Caremark, L.L.C.*, No. 3:16-CV-0264-D, 2016 WL 3126237, at *2 (N.D. Tex. June 3, 2016). The defendant's burden is met if "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount."[1] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (cleaned up). If the defendant meets its burden, "the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed the sum or value of $75,000, exclusive of interest and costs." *A & C Disc. Pharmacy*, 2016 WL 3126237, at *2.

"When the plaintiff seeks declaratory or injunctive relief, in addition to actual damages, courts measure the amount in controversy by the value of the litigation's object." *Pampallona v. Newrez, LLC*, No. 4:25-CV-161-SDJ, 2025 WL 2901867, at *2 (E.D. Tex. Oct. 10, 2025). "In other words, the amount in controversy in such actions is the value of the right to be protected or the extent of the injury to be prevented." *Allstate Fire & Cas. Ins. Co. v. Love*, 71 F.4th 348, 352 (5th Cir. 2023) (cleaned up).

---

[1] Attorney's fees count toward the amount in controversy. *See Manguno*, 276 F.3d at 723. So do statutory multipliers. *See Voves v. Am. Econ. Ins. Co.*, No. 4:25-CV-441-SDJ, 2025 WL 2534000, at *2 (E.D. Tex. Sept. 3, 2025).

4

Value is determined from the perspective of the plaintiff, and the proper measure is the benefit to the plaintiff, not the cost to the defendant. *Pampallona*, 2025 WL 2901867, at *2.

Ultimately, the removal statute is to be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

### III. DISCUSSION

Neither Luinstra nor the Intervenor Plaintiffs demand a specific sum of monetary relief in their state-court pleadings. Nor do they include a range of monetary relief, apparently in violation of Texas law. *See* (Dkt. #20-3, #20-5); (Dkt. #36 at 7); TEX. R. CIV. P. 47(c) (requiring that petitions state a range of monetary relief sought). The burden thus fell on Nitor to plausibly allege in its notice of removal that the amount in controversy exceeds $75,000. Nitor met this initial burden, but the Former Employees and Neptune now contest the amount-in-controversy allegation. So the burden falls back on Nitor to "either show that it is 'facially apparent' that the claims exceed $75,000 or offer specific facts supporting the same." *Pampallona*, 2025 WL 2901867, at *1.

Because "each plaintiff must independently meet the minimum amount in controversy for diversity jurisdiction," the Court will address each plaintiff separately, starting with Luinstra. *Delgado v. Round Rock M3-05, LLC*, No. A-17-CV-00140-LY, 2017 WL 7805748, at *2 (W.D. Tex. June 6, 2017).

## A. Luinstra

The Court need not decide whether it is apparent from the face of Luinstra's petition that his claims are likely to exceed $75,000 because Nitor has produced "summary judgment type evidence of facts in controversy that support a finding of the requisite amount." *Manguno*, 276 F.3d at 723 (cleaned up). Specifically, Nitor submitted a declaration of its president containing facts which establish a high likelihood that the amount in controversy exceeds $75,000 as to Luinstra.

According to the declaration, following Luinstra's separation from Nitor, Luinstra, through Neptune, attempted to poach a Nitor project worth $260,000 per year and another project worth $651,232, both carrying "the likely opportunity for additional follow-on projects." (Dkt. #20-7 ¶¶ 44–56). Were Luinstra to succeed in this action, the non-compete and non-solicitation provisions of his employment agreement with Nitor would be unenforceable, thereby freeing him and Neptune to secure projects worth hundreds of thousands of dollars. The value of the requested injunctions, from Luinstra's perspective, is thus well over $75,000.

Nitor's declaration is sufficient to resolve Luinstra's motion to remand. The Court writes further to explain that it may also be apparent from the face of Luinstra's petition that his claims are worth more than $75,000. As explained above, Luinstra seeks broad injunctive and declaratory relief here. Such relief would render unenforceable the one-year non-compete and customer non-solicitation provisions in Luinstra's employment agreement, freeing Luinstra to continue operating and growing his fledgling company. Though he doesn't put a number on the value of that

6

relief, Luinstra describes the value in stark terms: "[Luinstra's] livelihood, his goodwill accumulated over his chosen career, and the viability of Neptune Security, Inc. depend on resolution of Nitor's unlawful threats to current and potential customers and to Neptune's vendors[.]" (Dkt. #20-3 ¶ 78). If Luinstra's forward-looking injunctive and declaratory relief were not enough to put this case over the amount-in-controversy threshold, Luinstra also seeks a suite of backward-looking relief: actual damages on his breach of contract and tortious interference claims, "including lost revenues, lost business opportunities, and costs of responding to Nitor's unlawful demands," exemplary damages on the tortious interference claims, treble damages under Texas Business and Commerce Code Section 15.21, and attorney's fees. (Dkt. #20-3 ¶¶ 57, 65, 67).

Luinstra would have the Court ignore all of this. On his telling, declaratory and injunctive relief are "by their very nature . . . not quantifiable," and "nothing else in his pleadings stretches the amount in controversy over [the] jurisdictional limit." (Dkt. #24 at 2). That is wrong, at least in part. Declaratory and injunctive relief are not, in fact, inherently unquantifiable; courts routinely value them in determining the amount in controversy. *See Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444, 446 (5th Cir. 1971) (explaining that courts routinely "find the requisite jurisdictional amount in actions brought to enforce covenants not to compete").

Luinstra also seems to believe that he can avoid federal jurisdiction simply by hiding the ball and refusing to put a number on the value of his claims. That is wrong too. In assessing the amount in controversy, a court need not close its eyes to the

7

obvious implications of a plaintiff's pleadings. "[T]hat the removing party bears the burden of proving the amount in controversy does not mean that the removing party cannot ask the court to make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015).

In *De Aguilar v. Boeing Co.*, for example, the Fifth Circuit "found it facially apparent that claims for 'wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses' exceeded $50,000 per plaintiff (the individual amount in controversy for diversity jurisdiction at that time), even though the complaint did not specify an amount of damages and the plaintiffs' attorney had submitted an affidavit stating that no plaintiff's damages exceeded $49,000." *Id.* (quoting *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993)). And in *Allen v. R & H Oil & Gas Co.*, the Fifth Circuit "held that a complaint supported federal jurisdiction because '[a] court, in applying only common sense, would find that' hundreds of plaintiffs who sought punitive damages for 'a wide variety of harm allegedly caused by wanton and reckless conduct' would collect more than $50,000 if they were successful." *Id.* (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995)).

All this to say, sometimes it is facially apparent from the nature of a plaintiff's claims that the amount in controversy is likely to exceed $75,000. That could very well be the case here. In any event, Nitor has shown by a preponderance of the

8

evidence that the amount in controversy exceeds $75,000 as to Luinstra, and Luinstra has not rebutted that showing, so the Court must deny Luinstra's motion to remand.

**B. West, Smith, and Damron**

Nitor has also shown by a preponderance of the evidence that the amount in controversy exceeds $75,000 as to each of the Intervenor Plaintiffs—West, Smith, and Damron. According to another declaration of Nitor's president, each of the Intervenor Plaintiffs received annual compensation well exceeding $75,000 while working for Nitor. West received an annual salary of $100,000, plus commissions of more than $110,000 in 2025 and $181,000 in 2026. (Dkt. #44-1 ¶ 19). Smith received an annual salary of $80,000, plus commissions of more than $250,000 in 2026 and $64,000 in 2025. (Dkt. #44-1 ¶ 34). And Damron received an annual salary of $200,000. (Dkt. #44-1 ¶ 37). Although the Intervenor Plaintiffs have not disclosed their new compensation at Neptune, the Court can and will infer that they will earn something approximating their prior compensation. *See Sharpe v. Zimmer, Inc.*, No. CV 09-3018, 2009 WL 10690660, at *3 (E.D. La. May 4, 2009) ("The Court further agrees with [defendant] that there is no reason to assume that plaintiffs would have quit their . . . jobs [with defendant] to earn less at [their new employer].")*; Ernst v. Stryker Corp.*, No. 3:24-CV-0854-X, 2024 WL 1557394, at *2 (N.D. Tex. Apr. 10, 2024) (valuing injunctive relief in a non-compete case based on the plaintiff's prior salary). Thus, the value of the requested injunctions—invalidating the Intervenor Plaintiffs' one-year non-compete agreements—is at least $75,000 as to each of the Intervenor Plaintiffs.

In addition to injunctive relief, each of the Intervenor Plaintiffs seeks an undisclosed amount of actual damages, exemplary damages, treble damages, and attorney's fees. (Dkt. #20-5 at 10). In total, then, the amount in controversy as to each of the Intervenor Plaintiffs is likely to well exceed $75,000. Because the Intervenor Plaintiffs have not shown to a legal certainty that the amount in controversy does not in fact exceed $75,000, the Court must deny their motion to remand.

## C. Lombas and Neptune

The Court need not determine whether the amount-in-controversy requirement is met as to Counter Defendants Lombas and Neptune because the Court has supplemental jurisdiction over those parties under 28 U.S.C. § 1367(a). Subject to a few exceptions,[2] "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.*

Here, Lombas left Nitor at (or around) the same time as Luinstra, Smith, West, and Damron to work for the same company—Neptune. *See supra* Part I. Thus, Nitor's claims against Lombas and Neptune and its claims against Luinstra, Smith, West,

---

[2] The primary exception, 28 U.S.C. § 1367(b), "does not apply to parties joined under Rule 13(h) by a defendant asserting either a counterclaim or crossclaim." *ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 1:19-CV-7800-MKV, 2021 WL 1177532, at *15 (S.D.N.Y. Mar. 29, 2021) (cleaned up). Here, Defendant Nitor added Lombas and Neptune by counterclaim under Rule 13(h), *see* (Dkt. #2 at 14), so Section 1367(b) is inapplicable.

and Damron "derive from a common nucleus of operative fact" and form part of the same case or controversy. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).  Because the Court has original jurisdiction over Plaintiff and Intervenor Plaintiffs under 28 U.S.C. § 1332, it may exercise supplemental jurisdiction over Counter Defendants under 28 U.S.C. § 1367. Accordingly, the Court will deny Counter Defendants' motion to remand or dismiss under Rule 12(b)(1).

### IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff Michael Luinstra's Motion to Remand, (Dkt. #24), is **DENIED**.

It is further **ORDERED** that Intervenor Plaintiffs Zachary West, Michael Damron, and Christopher Smith's Motion to Remand, (Dkt. #41), is **DENIED**.

It is further **ORDERED** that Counter Defendants Lauren Lombas and Neptune Security, Inc.'s Motion to Remand or Alternatively Motion to Dismiss Under Rule 12(b)(1), (Dkt. #42), is **DENIED**.

**So ORDERED and SIGNED this 29th day of July, 2026.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE